# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**UNITED STATES OF AMERICA**     )
    )    **NO. 3:21-cr-00064**
**v.**     )
    )    **JUDGE CAMPBELL**
**CYDOKSO SAPP**     )

## <u>MEMORANDUM AND ORDER</u>

### I.     INTRODUCTION

Pending before the Court is Defendant's Motion to Suppress Evidence. (Doc. No. 28). The Government responded to the motion. (Doc. No. 30). On October 6, 2021, the Court held a hearing on the motion. (Doc. No. 35; Trans., Doc. No. 43). The parties then filed post-hearing briefs. (Doc. Nos. 41, 42).

On October 29, 2019, police searched Defendant's car and apartment and found firearms, ammunition, drugs, cash, and other evidence. Defendant contends the searches were without probable cause and seeks to suppress all evidence obtained from the searches.

### II.     FACTS[1]

On October 25 and 29, 2019, as part of an investigation into a drug trafficking organization, agents of the Clarksville Police Department conducted surveillance on an apartment in Clarksville, Tennessee (the "Apartment"), believed to be the residence of the Defendant Cydokso Sapp. (Doc. No. 33; Hearing Trans., Doc. No. 43 at 7-8). On October 25, 2019, agents saw Defendant engage in what they believed to be narcotics transactions. (Hearing Trans., Doc. No. 38 at 8).

---

[1]     The facts are drawn from the testimony and evidence presented during the hearing held on October 6. 2021 (Trans., Doc. No. 43), a body camera video of arrest (Doc. No. 30, Ex. 2 (manually filed)), and the search warrant and warrant affidavit (Doc. No. 33).

The first suspected transaction took place in the parking lot of a near-by gas station. (Doc. No. 33). Agents observed a white Nissan Altima that had been parked in front of the Apartment drive to a gas station and park next to another vehicle, a Dodge Ram. (*Id.*). Agents observed a person later identified as David Marshall leave the Nissan Altima, get into the Dodge Ram and drive away. (*Id.*). One of the agents, Agent Joshua Smith, followed the Dodge Ram and pulled it over for a traffic infraction. (*Id.*). During the stop, Marshall told Agent Smith that he had a gram of cocaine that he purchased from a black male named "Cy" in the white Nissan. (*Id.*). He stated that he had called "Cy" at a specified phone number to arrange the purchase. (*Id.*). Marshall identified the Defendant from a photograph as the person who sold him the cocaine. (*Id.*).

While Agent Smith followed the Dodge Ram, another agent, Agent Will Evans, followed the Nissan Altima back to the Apartment. (*Id.*). Agent Evans observed Defendant use a key to unlock the front door to the Apartment. (*Id.*).

Later that day, Agent Matthew Ferrell observed Ralph Lakine drive to the Apartment in a blue Chevrolet Cobalt registered to a different individual. (*Id.*). Lakine entered the Apartment, remained there for an unspecified amount of time, and then left the Apartment and drove to a McDonalds. (*Id.*). Through a search of police records and databases, agents learned Lakine was a suspect in a drug complaint and was driving on a revoked license. (*Id.*). Agents took Lakine into custody for driving on a suspended license. (*Id.*). A search of his person and vehicle revealed a bag of cocaine and two bags of marijuana. (*Id.*).

Agents surveilled the Apartment again a few days later on October 29, 2019. (*Id.*). They had learned that Defendant had two prior drug convictions in 2005 and 2012 and an active warrant for simple possession. (*Id.*; Hearing Trans., Doc. No. 38 at 8-9) They observed Defendant leave the Apartment in a different car – a blue Kia sedan – and drive less than five minutes to a nearby

package store. (Hearing Trans., Doc. No. 38 at 11). Defendant parked the Kia and entered the package store, leaving the keys in the ignition, the engine running, and the car unlocked. (*Id*. at 13-15). As Defendant exited the package store, agents arrested him on the outstanding warrant. (*Id*. at 12). The agents placed Defendant in handcuffs and conducted a search of his person. (*Id*.). Agent Smith testified that he "smelled the odor – a distinct odor of marijuana coming from his person." (*Id*.). Agents did not find any marijuana, marijuana paraphernalia, or anything else that could have been the source of the odor on Defendant. (*Id*. at 14).

One of the arresting agents was wearing a body camera, the footage from which has been filed with the Court. (Doc. No. 30, Ex. 2 (manually filed) (the "Video")). The Video footage shows Agent Smith say, "We can search his car, he's got the smell of odor of marijuana on him." (*Id*. at 2:15). Agent Smith asked Defendant: "Is there anything illegal in your car, Mr. Sapp?" (*Id*. at 2:25). Defendant responded, "I don't have no smell of marijuana on me." (*Id*.). Agents then placed Defendant in the back of a patrol car. (Hearing Trans., Doc. No. 38 at 14). After they could not find keys to the car in the property collected from Defendant, Agent Smith returned to the patrol car, searched Defendant's person again, and asked, "Where are the keys at, brother? They keys to your car." (Video at 3:10). Defendant responded, "I don't have no car." (*Id*.). Agent Smith asked, "You don't have a car?" Defendant stated, "Naw." (*Id*).

At that point, the agents realized that the car was unlocked, and running, and the keys were inside. (Hearing Trans., Doc. No. 38 at 15). Agent Smith explained that although he was asking for the keys because he intended to search the car, even if he had not intended to search the car, agents needed to locate the keys to secure the vehicle. (*Id*. at 16, 26). Pursuant to department policy, because the vehicle was not unlawfully parked, they would have locked the car and taken the keys to prevent someone from stealing it. (*Id*.).

Agents searched the car and found a loaded Masterpiece Arms 9mm pistol under a sweatshirt on the front passenger seat, marijuana residue (described by Agent Smith as "a flake"), and $924 in cash. (*Id*. at 32; Doc. No. 30-1). Agent Smith testified they searched the car because "the source of the smell of marijuana could have very well been inside that vehicle." (Hearing Trans., Doc. No. 38 at 15).

That evening, agents obtained a warrant to search the Apartment. (Doc. No. 33). As discussed in further detail below, the search warrant affidavit detailed the two suspected drug transactions on October 25, 2019, the discovery of the firearm and marijuana residue in the blue Kia, and Defendant's prior drug-related convictions in 2005 and 2012. (*Id*.). In the Apartment, agents found contraband including fentanyl, cocaine, and additional firearms.

### III.    ANALYSIS

Defendant seeks to suppress evidence obtained from the car and the Apartment on grounds that neither the warrantless search of the car, nor the warrant to search the Apartment, was supported by probable cause.

The United States argues the vehicle search was permissible under the automobile exception, but that Defendant does not have standing to contest the search because he disavowed any ownership interest in the vehicle when he answered, "I don't have no car," when asked where the keys to his car were. With regard to the search warrant, the Government argues that, even if the search of the vehicle was unlawful and the information regarding the firearm and marijuana residue found in the vehicle are excluded from consideration, the warrant is supported by probable cause.

4

## A.    The Car Search

### 1.  Standing

As an initial matter, the Government argues Defendant lacks standing to assert a Fourth Amendment challenge to the search of the vehicle because he allegedly disclaimed any interest in it when he said, "I don't have no car," when officers asked him where the keys were.   The Government argues that, through his statement, "I don't have no car," Defendant effectively disavowed any interest in the vehicle and forfeited any legitimate expectation of privacy in its search.

"[T]he Government has the burden of establishing by a preponderance of the evidence that a 'defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his interests in the item searched and seized." *United States v. Eden*, 190 F. App'x 416, 423 (6th Cir. 2006).  In support of its argument that Defendant disclaimed any privacy interest in vehicle, the Government cites two Sixth Circuit cases in which persons who disavowed ownership in luggage subsequently searched by police forfeited standing to contest the search. *See United States v. Frazier*, 936 F.2d 262, 264-65 (6th Cir. 1991); *United States v. Tolbert*, 692 F.2d 1041, 1045 (6th Cir. 1982).

In *Frazier*, the defendant's traveling companion placed a bag on the floor at the airport. *Frazier*, 936 F.2d at 263. Both defendant and the companion walked away from the bag. *Id*. When later asked by officers if the bag was his, the defendant said it was not. *Id*. He repeated this disclaimer again during questioning in an interrogation room, and he signed a form consenting to a search of the bag. *Id*. Under these circumstances, the *Frazier* court held the defendant did not have a legitimate privacy interest in the bag and lacked standing to challenge its search. *Id*. at 265.

*Tolbert* involved a similar situation in which officers searched a suitcase left by the

5

defendant at the airport baggage claim. *Tolbert*, 692 F.2d at 1043-45. When initially questioned by agents outside the airport terminal, the defendant, who had removed the baggage claim ticket from her ticket folio, denied having any luggage. *Id*. at 1043. The defendant then returned to the terminal for further questioning. *Id*. Agents brought the unclaimed luggage to the airport DEA office and the defendant again denied ownership of the luggage. *Id*. at 1044. The court held the *Tolbert* defendant had no reasonable expectation of privacy in luggage of which she specifically and vigorously disclaimed ownership. *Id*. at 1045.

Here, the Court cannot conclude that through his statement – "I don't have no car" – Defendant forfeited a legitimate expectation of privacy in the vehicle. Neither the question ("Where are the keys at, brother?") nor the response ("I don't have no car") would have led a reasonable person to believe Defendant abandoned his interest in the vehicle. Agent Smith did not ask Defendant about a specific vehicle, or request consent to search the vehicle in question. He asked generally, "Where are the keys at, brother?" Without further inquiry, Agent Smith's follow-up question, "You don't have no car?" does not add support the Government's abandonment theory. Indeed, Agent Smith did not claim to believe Defendant disclaimed any interest in the vehicle. He stated that he searched the vehicle because he had probable cause to do so based on the odor of marijuana on Defendant's person. (Hearing Trans., Doc. No. 38 at 36).

Under these circumstances, the Court finds Defendant did not relinquish a legitimate expectation of privacy in the vehicle and has standing to contest its search. In light of this conclusion, the Court need not reach the question of whether Agent Smith asking Defendant about the car keys was a *Miranda* violation.

6

2. <u>Automobile Exception</u>

Generally, warrantless searches are deemed unreasonable under the Fourth Amendment, subject to certain exceptions. *See United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). The Government argues the search was permissible under the automobile exception, which allows officers to search a vehicle without a warrant if they have "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Galvez*, 645 F.3d 347, 355 (6th Cir. 2011). "[P]robable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *See United States v. James*, 575 F. App'x 636, 639 (6th Cir. 2014) (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)).

Agent Smith testified that he believed there was probable cause to search the vehicle because Defendant had the odor of marijuana emanating from his person at the time of arrest, the source of the odor (marijuana or marijuana paraphernalia) was not found on the Defendant, leading him to believe the source of the odor or evidence of marijuana use would be found in the vehicle. (Hearing Trans., Doc. No. 38 at 46). The Government acknowledges that the odor of marijuana on the driver of a vehicle does not necessarily give rise to probable cause to search the vehicle. Indeed, "although [the Sixth Circuit] has long recognized that the odor of marijuana emanating from a vehicle can establish probable cause to believe there is marijuana in the vehicle, Sixth Circuit precedent has not established that the smell of marijuana on the driver of a vehicle can give rise to probable cause to search the vehicle for marijuana." *James*, 575 F. App'x at 639.

In *James*, the odor of marijuana on the defendant's person was one of many factors contributing to probable cause to search the vehicle he has just exited. *Id*. at 640. The *James* court noted that the odor of marijuana "was not sufficient on its own to provide probable cause to search

the vehicle," but found additional circumstances supported the officers' assessment that marijuana would be found in the vehicle. *Id*. These additional circumstances included the defendant's attempt to flee and elude police during an attempted traffic stop, the strong odor of marijuana on defendant's person within seconds of exiting his vehicle, and that a search of the defendant revealed no marijuana or marijuana paraphernalia. The court concluded that, based on these circumstances, there was a fair probability that marijuana would be found in the vehicle the defendant had just exited. *Id*.

Here, Agent Smith testified that he believed he had probable cause to search the car because Defendant had the odor of marijuana coming from its person. (Hearing Trans., Doc. No. 38 at 36). As additional factors supporting probable cause, the Government cites the two suspected narcotics transactions a few days earlier, Defendant's prior drug convictions, that the vehicle to be searched was a rental car, and that the agents did not find any marijuana or paraphernalia on his person. Government argues that even if Defendant's "arguably evasive" statement – "I don't have no car" – is removed from the totality of the circumstances probable cause analysis, agents had sufficient facts to suggest there was a fair probability that marijuana or other contraband would be found in the vehicle.

The Court disagrees. Even considering these additional circumstances, they do not give rise to a fair probability that the vehicle contained marijuana or marijuana paraphernalia. Here, at least three officers followed Defendant during the approximately five-minute drive from the Apartment to the package store. None of the officers observed Defendant smoking in the vehicle or any other evidence that Defendant was smoking in the vehicle. Unlike in *James*, Agent Smith did not detect the odor of marijuana on Defendant "within seconds" of him exiting the vehicle. Defendant left the car and was in the store for about five minutes before Agent Smith declared

8

Defendant smelled of marijuana and they could search his car. The court also notes that while the defendant in *James* had the "strong odor" of marijuana on his person, there was no testimony in this case about the pungency of the odor. There is no reasonable basis to conclude Defendant was smoking marijuana in the car on his way to the package store or any other reason to believe the source of the odor would be found in the car.

The circumstances tying the vehicle to the suspected drug transactions allegedly involving Defendant are equally unavailing. Other than the fact that these suspected drug transactions involved the Defendant, they have no connection to the car he was driving the day of his arrest several days later. Indeed, the only time Defendant was observed in the Kia was during the five-minute drive from the Apartment to the package store. Viewed as a whole, the circumstances do not establish probable cause search the vehicle. There is no reason to believe Defendant was smoking marijuana in this vehicle or conducting narcotics transactions from this vehicle such that there was a fair probability that the vehicle contained marijuana or marijuana paraphernalia.

The exclusionary rule prohibits the Government from introducing at trial any evidence secured through an unlawful search. *See Mapp v. Ohio*, 367 U.S. 643, 656 (1961). Accordingly, for the reasons stated above, the motion to suppress evidence obtained from the vehicle search will be granted.

**B.    Search of the Apartment**

Unlike the search of the vehicle, agents obtained a warrant to search the Apartment. (*See* Doc. No. 33). The Fourth Amendment requires that a search warrant is supported by probable cause. U.S. Const. Amend. IV. To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain sufficient facts that indicate a fair probability that evidence of a crime will be found at the place to be searched. *United States v. Moore*, 999 F.3d 993, 996 (6th

9

Cir. 2021). "With great deference to the issuing judge's determination, federal courts examine the affidavit's four corners to determine whether, under the totality of the circumstances, the low bar of probable cause has been overcome." *Id*. The affidavit must adequately describe a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). Where, as here, the warrant application is supported, in part, with information unlawfully obtained, the Court must determine whether probable cause existed without the unlawfully obtained information. *United States v. Chapman-Sexton*, 758 F. App'x 437, 440 (6th Cir. 2018) (evidence obtained pursuant to a search warrant that relies, in part, on unlawfully obtained information may nevertheless be admissible "[i]f the application for a warrant contains probable cause apart from the improper information." (quoting *United States v. Jenkins*, 396 F.3d 751 (2005)).

"[T]o establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found in the place to be searched.'" *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (quoting *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016)). "The nexus between 'criminal activity' and the item to be seized is 'automatic[]' when the object of the search is contraband.'" *Id*.

The state court judge issued a warrant to search the Apartment for evidence of the following crimes: money laundering in violation of Tenn. Code Ann. § 39-14-901, and felon in possession of a firearm in violation of Tenn. Code Ann. § 39-17-1307.

As an initial matter, the Court will address Defendant's suggestion that because the warrant finds probable cause to search for evidence of money laundering and illegal possession of firearms, the inquiry must focus specifically on probable cause for those crimes rather than drug trafficking.

10

(*See* Doc. No. 28 at 6). Where the warrant affidavit contains facts to support probable cause that contraband – here illegal narcotics and firearms – will be found at a location, it does not matter whether the police suspected the defendant of drug trafficking, money laundering, or some other crime. *See United States v. Church*, 823 F.3d 351, 354-55 (6th Cir. 2016) (rejecting the defendant's argument that warrant was defective because it was issued pursuant to an affidavit that established probable cause for the wrong crime).

The case relied upon by Defendant does not mandate a different result. In *United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008), the court held that evidence of child molestation alone did not establish probable cause to believe the contraband sought – child pornography – would be present on the premises. *Hodson*, therefore, stands for the uncontroversial rule that there must be probable cause to believe the contraband specified in the warrant would be found at the premises to be searched. *Id*. at 293. Here the question is whether the facts submitted in support of the warrant application establish probable cause to believe the contraband sought – including illegal drugs and firearms – would be found at the Apartment.

The affidavit in support of the search warrant states that the police conducted surveillance of the Apartment on October 25, 2019, during which they observed two suspected drug transactions involving Defendant. The following details were provided in the warrant application. (*See* Doc. No. 33). The first suspected transaction involved Defendant leaving the Apartment, driving to a gas station for the transaction, and returning to the apartment. Specifically, the warrant affidavit states that agents observed a while Nissan Altima parked outside the Apartment. The Nissan drove to a gas station parking lot and parked next to a Dodge Ram. Officers observed a while male exit the Nissan and enter the Dodge Ram. They followed the Dodge Ram from the parking lot and initiated a traffic stop. A search of the vehicle revealed cocaine, marijuana oil, and

a pipe. The driver of the Dodge Ram, David Marshall, told police that he had contacted Defendant to arrange a purchase of a gram of cocaine at the gas station. He stated the person from whom he purchased the cocaine was named "Cy" and identified the Defendant from a photo. Another officer followed the Nissan Altima back to the Apartment. The officer observed a black male driver believed to be Defendant and saw him use a key to open the door to the Apartment.

The second transaction is suspected to have taken place in the Apartment. The warrant application states that agents observed Ralph Lakine enter the Apartment. A records search revealed Lakine was driving on a revoked license and was named in a drug complaint. An Agent followed Lakine to a McDonalds. When he was taken into custody for driving on a revoked license, agents found 100 grams of cocaine and two bags of marijuana on his person.

A few days later, on October 29, 2019, police again conducted surveillance on the Apartment. By this time, they had learned the Defendant had prior drug convictions from 2012 and 2005 and an outstanding warrant for simple possession. Agents observed Defendant leave the Apartment in a blue Kia sedan and drive to a nearby package store, where they arrested him on the outstanding warrant as he exited the store. The arresting agent smelled the odor of marijuana on Defendant's person.

The warrant affidavit stated that, based on the investigation, it was believed the Defendant is a drug dealer and resides at the Apartment and that the Apartment will have evidence related to narcotics trafficking and firearm possession. The warrant application included statements that, based on the experience and training of the testifying agent, drug dealers will often hide contraband and proceeds of drug sales in their residences, and commonly have firearms in their possession or residences.

Defendant disputes that these facts are sufficient to tie the Defendant or the Apartment to suspected drug trafficking. He notes that the affidavit shows only two suspected drug transactions and argues that neither of these incidents establishes that Defendant sold drugs. He characterizes the incidents as showing "merely that a person possessed a personal-use quantity of drugs shortly after being in or near [the] Apartment" or the Defendant.

Defendant also contends David Marshall, who claimed to have purchased cocaine from Defendant in the gas station parking lot, was "evidently lying" about having met Defendant there to purchase cocaine because the police report did not give every detail of their interaction at the gas station parking lot. Specifically, Defendant contends that because the affidavit only stated that Marshall walked from the Nissan occupied by Defendant to the Dodge and did not specifically state that Marshall arrived separately and walked from the Dodge to the Nissan before returning to the Dodge and driving away, Marshall must have been lying about meeting Defendant at the gas station to buy cocaine.

The Sixth Circuit prohibits this sort of hyper-technical reading of the search warrant application. *United States v. Woolsey*, 361 F.3d 924, 926 (6th Cir. 2004). Affidavits are not held to an "exacting degree of specificity," and need only "allege facts that create a reasonable probability" that the Defendant engaged in the alleged conduct. *See United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019). A commonsense reading of the warrant application indicates that Marshall identified Defendant as the person who sold him cocaine. While is it theoretically possible that Marshall was lying, the Court notes that his statement is consistent with the agents' observations. Moreover, the search warrant application is not read piecemeal, but as a whole. *Id*. (noting that "[w]hen it comes to probable cause, "the whole is often greater than the sum of its parts – especially when the parts are viewed in isolation") (quoting *District of Columbia v. Wesby*,

138 S.Ct. 577, 588 (2018)).

With regard to the nexus between the evidence sought and the place to be searched, the Court finds that the facts in the warrant affidavit establish a nexus between the evidence sought – drugs, firearms, and other evidence of drug dealing – and the Apartment. Defendant was observed going to and from the Apartment, used a key to let himself into the Apartment, and on at least one occasion was suspected of selling cocaine from the Apartment. *See United States v. Miller*, 850 F. App'x 370 (6th Cir. 2021) (noting that the Sixth Circuit has "repeatedly held that probable cause exists to search a residence for drug-related evidence when a drug dealer travels directly from that residence to the site of a drug deal").

Taken as a whole, the totality of the circumstances, even after excising the evidence found in the Kia following Defendant's arrest, establishes a fair probability that the drugs or evidence of drug dealing, including firearms, would be found inside the Apartment.

## IV.    CONCLUSION

For the reasons stated above, the Motion to Suppress Evidence is **GRANTED** in part, and **DENIED** in part. The motion is granted with regard to the evidence seized from the vehicle. Accordingly, the firearm and evidence of marijuana residue from the vehicle will be suppressed. The motion is denied with regard to the evidence seized from the apartment pursuant to the search warrant.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE